[No. G036809. Fourth Dist., Div. Three. Mar. 16, 2007.]

PATRICIA LEE, Plaintiff and Respondent, v.
SOUTHERN CALIFORNIA UNIVERSITY FOR PROFESSIONAL
STUDIES, Defendant and Appellant.

COUNSEL

Duane Morris, Keith Zakarin and Edward M. Cramp for Defendant and Appellant.

Wilcox & Peirano and Jean C. Wilcox for Plaintiff and Respondent.

**OPINION**

**MOORE, J.**—Plaintiff Patricia Lee sued the Southern California University for Professional Studies for violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) and Business and Professions Code section 17200. The complaint includes class action allegations. Because some of the potential class members—not including Lee—signed a contract including an arbitration clause, defendant filed a motion to compel arbitration, which the trial court denied. We affirm and find that no grounds exist for compelling arbitration when the only plaintiff currently before the court never agreed to arbitrate her claims. The question of whether she is an adequate class representative for those who did, and all other matters pertaining to whether the action is appropriate for class treatment, are issues for the trial court to decide when Lee moves to certify the class.

I

FACTS

Southern California University for Professional Studies (SCUPS) is a private postsecondary institution in Santa Ana, California. It operates under the Bureau for Private Postsecondary and Vocational Education (the Bureau), part of the California Department of Consumer Affairs. SCUPS provides educational programs, primarily through distance learning, which may lead to a number of different degrees.

In July 2000, Lee enrolled as a student in SCUPS's four-year juris doctorate program. According to the catalog in effect at the time, SCUPS had a cancellation and refund policy that permitted refunds only during an eight-day cancellation period. Lee paid a total of $2,800 to enroll, comprising one year's tuition and a $100 application fee.

After the eight-day cancellation period had expired, Lee became ill and was incapable of completing any coursework. She alleges that she notified SCUPS of her illness and asked to be placed on a non-bar track, to continue her studies but not for the sake of obtaining a degree. Lee claims SCUPS did not act on this request.

In November 2002, SCUPS sent a letter to Lee informing her she was not making satisfactory academic progress and was being administratively withdrawn from SCUPS. In 2004, Lee filed a complaint with the Bureau, alleging she had been unjustly terminated from the juris doctor program and that SCUPS had refused to refund her prepaid tuition. After a number of administrative proceedings, Lee alleges the Bureau ultimately found, among

other things, that SCUPS was required to use the statutory formula for refunds if a student had completed less than 60 percent of an educational program. The Bureau also found problems with SCUPS's student complaint procedures.

Based on the Bureau's findings, Lee filed a civil complaint alleging violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL). She filed the case as a putative class action under the CLRA, seeking to represent consumers similarly situated. The complaint proposed to define the class as, "All adult student consumers who enrolled in and paid the tuition charged for the materials and services supplied in a course program with SCUPS and who subsequently either voluntarily withdrew or were administratively withdrawn by SCUPS and who did not receive a refund of their paid tuition from SCUPS upon their dismissal."

In response to the complaint, SCUPS filed a petition to compel arbitration and to stay the trial court proceedings. SCUPS claimed that 519 students had been dropped or dismissed from its program during a four-year period, and of those, 408 (none of whom were law students) had signed enrollment agreements containing arbitration clauses. The remaining 111, like Lee, were law students whose enrollment agreements did not include arbitration clauses.

At the hearing on the motion to compel arbitration, the trial court denied the motion. SCUPS now appeals.

## II

## DISCUSSION

*Issue Presented and Standard of Review*

To determine the standard of review, we must first determine the issue presented. Simply put, the question on appeal is whether an individual who did not sign an arbitration agreement can be compelled to arbitrate her claims because her complaint was filed as a putative class or representative action. We need not make any factual findings to resolve this issue; it is a question of law, and we therefore consider it de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

*Motion to Compel Arbitration*

SCUPS's argument can be summarized thusly: Lee filed a complaint under the UCL and the CLRA as a representative and/or class action. Some

members of the potential class signed arbitration agreements. Therefore, Lee, even though she is not a party to an arbitration agreement, is required to arbitrate her claims.

SCUPS offers no authority directly on point, instead relying on basic principles pertaining to arbitration. Throughout its argument, however, SCUPS ignores the fact that Lee—the only plaintiff currently before the court—never signed an arbitration agreement. This key fact is undisputed. Instead, SCUPS argues that because Lee seeks to "stand in the shoes" of some people who have signed arbitration agreements, she is therefore required to arbitrate her claims. SCUPS is incorrect for several reasons.

The most fundamental reason is that arbitration requires consent; the parties must mutually agree to resolve their disputes in an alternate forum. "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. [Citation.]" (*Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358]; see also Code Civ. Proc., § 1281 [right to arbitration depends on contract].) Very limited circumstances exist under which a nonparty to an arbitration agreement can be bound by someone else's consent (e.g., agency, a spousal relationship or parent/minor child relationship), and none of those exist here. (See *Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142 [119 Cal.Rptr.2d 489].)

SCUPS does not dispute (or even mention) this most fundamental principle. Its entire argument assumes the existence of a valid arbitration agreement. This is, at best, completely premature, and at worst, simply inapplicable. At the moment, the only plaintiff before the court is Lee, who did not sign an arbitration agreement. SCUPS's arguments are premised on the notion that a class will eventually be certified as to the CLRA claim, and that class will include all students, regardless of whether or not they signed arbitration agreements. That has not yet happened, and Lee represents nobody but herself until a class is certified.

Lee has not, as of yet, brought a motion to certify any class. It is quite possible that when she does so, she will seek to narrow the definition of the class to law students only, none of whom signed arbitration agreements, according to SCUPS's own evidence. She is certainly entitled to do that— SCUPS offers no authority for the proposition that a plaintiff is bound by a preliminary class definition set forth in the complaint.[1] It is also possible (and

---

[1] SCUPS offers several arguments on this point, but none of them are persuasive. Lee may amend her complaint to redefine the class, but the sole case SCUPS cites on this point does not stand for the proposition that she is required to do so; it merely states that a demurrer may be

this court takes no position on this) that however Lee defines the class, any motion for class certification will be denied for other reasons. We cannot know this, of course, because there has, as of yet, been no such motion. Lee is the only plaintiff before the court at the moment, and she is not bound by an arbitration agreement; therefore, she cannot be compelled to arbitrate.

SCUPS next argues that because the UCL claim is a representative action, Lee is bound by the arbitration agreements of some of the individuals she seeks to represent. Lee's UCL claim, however, seeks only injunctive relief. Even if Lee had consented to an arbitration clause, she would not be required to arbitrate a claim under the UCL that seeks only injunctive relief on behalf of the public, as opposed to restitution and/or disgorgement of profits. (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315–316 [133 Cal.Rptr.2d 58, 66 P.3d 1157] (*Cruz*).) Thus, if she had signed an agreement with an arbitration clause, Lee's claim for damages under the CLRA would be arbitrable. But her claims for injunctive relief, under either the CLRA or UCL, would not be. (30 Cal.4th at pp. 311–316.) In finding that such claims for injunctive relief are not arbitrable, the California Supreme Court noted that " 'the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators.' [Citation.]" (*Id.* at p. 312.)

SCUPS, however, ignores this important holding in *Cruz*, and instead relies on *Net2Phone, Inc. v. Superior Court* (2003) 109 Cal.App.4th 583 [135 Cal.Rptr.2d 149] (*Net2Phone*). *Net2Phone* was a pre-Proposition 64 case, thus, a plaintiff seeking to represent others in an action under the UCL did not have to allege any actual damage. In *Net2Phone*, a consumer group sought to represent a group of consumers in an action alleging that the defendant's practice of "rounding up" telephone usage to the next minute violated the UCL. (109 Cal.App.4th at p. 586.) All the impacted consumers, however, had accepted the defendant's terms of use and end user license agreement, which included a New Jersey forum selection clause. (*Ibid.*)

The court held the forum selection clause was enforceable, stating: "[W]e hold that where a private plaintiff which has itself suffered no injury files a representative action under California's unfair competition law . . . [citation]

---

sustained if the complaint fails to define any community of interest. (*Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154 [166 Cal.Rptr. 16].) Indeed, nothing prevented SCUPS from filing a concurrent demurrer, arguing the complaint failed to do so. As no demurrer was filed or ruled upon, we cannot and will not address any of its arguments about the viability of a proposed class limited to law students only. Further, any arguments that certifying a class limited to law students would deprive SCUPS of due process are appropriately raised at the time a motion to certify such a class is actually made. They are not presently before this court.

alleging that certain of defendant's contractual provisions subject its customers to an 'unlawful, unfair or fraudulent business . . . practice' and the contract contains a forum selection provision, the plaintiff is bound by that provision just as defendant's customers would be bound had they filed the action themselves." (*Net2Phone, supra*, 109 Cal.App.4th at p. 585.)

The court reasoned: "A forum selection clause may also be enforced against a plaintiff who is not a party to the contract in question if the plaintiff is 'closely related to the contractual relationship.' The plaintiff challenging the forum selection clause has the burden of showing, in response to a defendant's motion to stay or dismiss, that enforcement of the clause would be unreasonable under the circumstances. [Citation.]" (*Net2Phone, supra*, 109 Cal.App.4th at p. 588.) The plaintiff consumer group was " 'closely related' to the contractual relationship" because it sought to stand in the shoes of those who were actually bound by the contract. (*Ibid.*) If the court held otherwise, a plaintiff could avoid a valid forum selection clause by having a third party file the case as a representative action. (*Id.* at p. 589.)

An arbitration clause, however, is entirely different in this context. An arbitration clause must be consented to by the person against whom it is enforced; there is no authority that the "closely related" test that applies to forum selection clauses applies to arbitration clauses. Both the case law and relevant statute require actual consent. Thus, *Net2Phone* fails as an analogy, and because it would conflict with the fundamental principle that arbitration requires consent, its holding cannot and should not be extended to arbitration clauses. *Net2Phone* is factually distinguishable from the present case in several other respects, but those are rendered relatively unimportant by this key distinction between forum selection and arbitration clauses.

SCUPS offers no case holding that a nonparty to an arbitration clause can be required to arbitrate simply because a case is filed as a class or representative action. Indeed, where the representative action seeks only injunctive relief, as alleged here, *Cruz* applies, and the claim is not arbitrable even if the named representative is a party to an arbitration agreement. (*Cruz, supra*, 30 Cal.4th at pp. 315–316.)

■ Any issues surrounding what might happen if a certain type of class is certified are not properly before us, as the trial court has not yet reached any conclusion as to whether a class action is even appropriate in this case. At this time, Lee is the only plaintiff, and because she never consented to arbitration, the trial court properly denied SCUPS's motion to compel arbitration.

## III

## DISPOSITION

The trial court's order is affirmed. Lee is entitled to her costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.